KING, Justice,
dissenting to Part Two:
¶ 66. Because, under McGilvery v. State, the trial court failed to acc'ount for the serious discrepancy between Cowart’s sentence and that of his codefendant London, indicating that Cowart was improperly punished for exercising his right to .trial by jury, and for acquitted, conduct, I dis-. sent-from-the plurality’s[14] decision to affirm his sentence.
. ¶ 67. Generally, a trial judge has broad discretion in determining a sentence, and this Court will not review the sentence so long as it is within the statutory limits. Young v. State, 731 So.2d 1120, 1124 (Miss.1999). However, this Court has held that, while “[w]e recognize it is properly within the purview of the Legislature to determine the 'range of sentences,” and “[w]e equally well recognize that our circuit judges, present throughout criminal trials and observing in detail the testimony and evidence, are uniquely suited to apply a range of sentences to spécifi'c offenses[,]” “[ojccasionally .cases come before us in which sentences may be so severe as to appear on the record inexplicable and justify remanding the matter to the ‘trial court for further consideration.” Davis v. State, 724 So.2d 342, 344-45 (Miss.1998). Furthermore, a sentence, even if within’ the statutory limits, is improper if it-violates the defendant’s constitutional rights. See Fermo v. State, 370 So.2d 930, 932 (Miss.1979); “A sentencing court may consider only legitimate factors and cannot base the sentence,: either in whole or in part, upon the defendant’s'exercising his constitutional rights.... ” Id. (emphasis added).

a. Whether Cowart is procedurally barred from appealing his sentence.

¶68. The State first argues that Co-wart is procedurally barred from appealing his sentence because he failed to contemporaneously object to his sentence. Co-wart did, however, raise objections to his sentence in his post-trial motion. While it *673 is true that the failure to raise a contemporaneous objection during trial, or during the course of a hearing, may not generally be cured by raising the issue in a post-trial motion,'it goes without saying that the same is not true for the final outcome of a trial or hearing. For example, a defendant need not contemporaneously object to a guilty verdict as against the weight or sufficiency of the evidence, but may properly raise his objections in a motion for new trial and/or a motion for judgment notwithstanding the verdict. The rationales behind the rule requiring contemporaneous objection include, first and foremost, that this Court does not generally decide questions that have not-been tried and passed upon by the trial court, Williams v. State, 684 So.2d 1179, 1203 (Miss.1996). In the case at hand, the trial court actually did try and pass upon Co-wart’s objections to his sentence, thus fulfilling the objective behind the rule requiring contemporaneous objections.
ÍI69. Additionally, this Court has cited three basic considerations which underlie the rule requiring contemporaneous objections. Id. First, requiring contemporaneous objections avoids costly new trials. Id. (quoting Oates v. State, 421 So.2d 1025, 1080 (Miss.1982)). Objecting to the sentence contemporaneously to the trial judge pronouncing the sentence would not have avoided a costly new trial, as the remedy for an objectionable sentence in this case would have been a new sentencing hearing. The sentencing hearing had already been held; objecting after the final result of the hearing was announced would not have avoided holding another. Second, requiring contemporanéous objections allows the offering party a chance to obviate the objection. Williams, 684 So.2d at 1203 (quoting Oates v. State, 421 So.2d 1025, 1030 (Miss.1982)). There was no “offering party” in this case, rather, the court was making its final ruling. Third, a trial court should not be “put in error” unless it has had the opportunity to pass on the question. Williams, 684 So.2d at 1203 (quoting. Oates v. State, 421 So.2d 1025, 1030 (Miss.1982)), As . noted, the .trial court had the opportunity to pass on. the question regarding the propriety of Co-wart’s sentence, and did indeed pass on the question regarding the propriety of Cowart’s sentence.
¶ 70. ! Requiring contemporaneous objections for most errors occurring during trial or during the course of a hearing is prudent. It avoids costly relitigation of issues that could be easily disposed of during the trial or proceeding. This Court has held: ’ ’
It is now well settled that when anything transpires during the trial that would tend to .prejudice the rights of the defendant, he cannot wait and take his ;chances with the jury on a favorable verdict and then obtain a reversal of the cause in this Court because of such error, but he must ask the trial court for a mistrial upon the happening of such occurrence when the same is, of such.a nature as would entitle him to. a mistrial.
Blackwell v. State, 44 So.2d 409, 410 (Miss.1950) (emphasis added); Williams, 684 So.2d at 1203. Requiring contemporaneous objections to the final result of a. proceeding, such as a verdict, a sentence, or a denial of a motion for new trial (was Cowart-required to object contemporaneously when the trial court denied -his motion for new trial, as well?), makes little sense. The 'concerns surrounding the rules requiring contemporaneous objections are adequately addressed when'objections to the final result of-a proceeding are properly made in post-trial or post-proceeding motions.' • Thus, I believe that Cowart’s objections to his sentence are properly before this Court.
*674 6. Whether the trial court improperly enhanced Cowart’s sentence.
¶ 71. Cowart argues that the trial court improperly enhanced his sentence, punishing him for exercising his right to trial, punishing him for acquitted conduct, and failing to examine all relevant factors. In support, of these arguments, he cites primarily to the great disparity between his sentence and London’s, especially highlighting the disparity in light of the fact that London was sentenced for an additional crime (manslaughter) for which Co-wart was not sentenced, and that London had prior felonies and Cowart did not.
¶72. The State argues that Cowart could not have been improperly punished for exercising his right to trial because he was never offered a plea deal. This argument misses the mark. A defendant need not be offered a plea deal to simply plead guilty to the charges against him. Cowart could have pled guilty to the charges without á plea deal. The State fails to address the argument that Cowart was improperly sentenced based on "acquitted conduct. Regarding whether the trial court considered all relevant factors when determining Cowart’s sentence, the State argues that it clearly did consider all factors.

i. Whether Cowart was punished for exercising his right to a jury trial.

¶ 73. Article III, Section 2, Clause 8 of the United States Constitution provides that .all criminal trials, except those for impeachment, shall be jury trials. U.S. Const., art. Ill, § 2, cl. 8. The Sixth Amendment to the United States Constitution 'provides that “[i]n all criminal prosecutions,' the accused shall enjoy the right to a speedy and public trial, by an impartial jury.” U.S. .Const, amend. VI. The Mississippi Constitution similarly provides that “[i]n all criminal prosecutions the accused shall have a right-to .., a speedy and. public trial by an.impartial jury.” Miss. Const. art. 3, § 26. The Mississippi Constitution then goes a step further and provides that “[t]he right of trial by jury shall remain inviolate.” Miss. Const. art. 3, § 81 (emphasis added); see Harrell v. State, 134 So.3d 266, 271 (Miss.2014) (the Mississippi constitution protects the right to a trial- by jury in “language stronger than that found in its federal counterpart”).
¶ 74. “To punish a person because ho has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person’s reliance on his legal rights is patently unconstitutional.” Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (internal quotations and citations omitted). Thus, “[a]n accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to stand trial rather than plead guilty.” Baker v. United States, 412 F.2d 1069, 1073 (5th Cir.1969); Thomas v. United-States, 368 F.2d 941 (5th Cir.1966); United States v. Wiley, 278 F.2d 500 (7th Cir.1960); Temple v. State, 498 So.2d 379 (Miss.1986) (“[I]t is absolutely impermissible for a trial judge to impose a heavier sentence based in whole or in part upon a defendant’s exercise" of his constitutionally protected right to trial by jury.” (internal’ quotations omitted)). The rationale behind the principle that a “defendant may not receive a harsher sentence solely, or even partially, because he refuses to plead guilty and proceeds to require the prosecution to prove his guilt” “is that the coercion or inducement casts a chill oyer the exercise of guaranteed fundamental, constitutional rights.” Fermo, 370 So.2d at 982.
• ¶ 75. Cowart relies on McGilvery v. State to support his position. McGilvery *675 v. State, 497 So.2d 67 (Miss.1986). McGilvery and his codefendant were indicted for armed robbery. Id. at 67. The codefendant, who McGilvery. claimed was the trigger-man, pled guilty and received a twenty-five year sentence. Id. at 69. McGilvery went to trial, was convicted, and was sentenced to forty-five years. Id. at 67-69. The Court noted that “the circuit judge gave no explanation as to his reason for imposing a 45-year sentence on McGilvery when [his codefendant] received only 25 years.” Id. at 69. Because a codefendant was also found guilty, the Court found that “the disparity of the sentence between the two mandated” the circuit judge explaining the reason for the difference. Id. The Court emphasized the absolute nature of the right to trial by jury, and that it is impermissible to penalize a defendant for exercising that right. Id. (quoting Pearson v. State, 428 So.2d 1861 (Miss.1983)). Thus, the Court remanded the ease so the circuit judge could have “an opportunity to state for the .record appropriate reasons for the disparity in the two sentences.” McGilvery, 497 So.2d at 69. It further held that “[i]£ there are [no appropriate reasons], then MeGilvery’s sentence should be reduced.” Id.
1176. The State counters that King'v. State applies, in which the Court found that giving King .a greater sentence than his codefendant was appropriate where the codefendant “confessed to his crimes, pled 'guilty, and testified for the State.” King v. State, 857 So.2d 702, 782 (Miss.2008). King is extremely distinguishable from the case at hand, and moreover, those were not the only reasons articulated by the Court for finding King’s lengthier sentence appropriate. First, King was convicted of and sentenced for.conspiracy,.sexual battery, and contributing to the delinquency of a minor. M at 781. In contrast, his codefendant pled" guilty to and was sentenced for a single count of conspiracy. Id. at 713. The Com’t also found the increased- sentence appropriate because “the evidence showed without dispute .. .- that King was the instigator and orchestrator of all of the crimes involved in this case.” Id. at 732. In contrast, Cowart was convicted of fewer crimes than London, and was not shown to be the “ringleader.” ‘ 1 "
¶77. The State also cites Laivson v. State, another very distinguishable case, in support of its argument. Lawson v. State, 748 So.2d 96 (Miss.1999). In Lawson, the court- sentenced Lawson and his codefen-dant each to twenty-five years. Id. at 99. However, the court suspended twenty-two years, of the codefendant’s sentence and gave him five years of supervised probation, while it gave Lawson twenty-five years with no suspension. Id. In affirming Lawson’s sentence despite this discrepancy, this Court noted that “[t]he trial judge compared the two defendants in relation to. the sentence each received.” Id. (emphasis added). It noted that the codefen-dant had no previous convictions, while Lawson had several, that the codefendant’s testimony coincided with that of the victim, and that the codefendant agreed to cooperate with the State. Id. at 99-100. Thus, u[a]fter a compa/rison, the trial judge found no reason existed for any suspension of Lawson’s sentence." Id. at 100. In contrast, Cowart had no previous felonies, and London, the eodefendant, had several. Also, the trial court in this case failed to conduct such a comparison of the sentences- of -the two defendants. This Court then specifically held: in Lawson that the tidal court was in line, with'McGilvery, in which “this Court remanded the case requiring that the circuit judge should document ... the criminal record of the co-defendant.” Id.
*676 ¶78. When all factors are considered, the discrepancy between the sentences of London and Cowart is significant and unexplained.[15] Cowart had no prior felonies and, according to the trial judge, had “led a fairly productive life,” while London had prior felony convictions, including attempted burglary and conspiracy.[16] Co-wart was sentenced for armed robbery and conspiracy, while London was sentenced for armed robbery, conspiracy, and manslaughter. Yet, with the extra, severe offense and the worse prior criminal history, London was sentenced to a total of at least eight years, or as much as thirteen years, less than Cowart.[17] Indeed, London’s armed robbery and conspiracy sentences in isolation amount to at most thirty-five years, perhaps as little as thirty years, eighteen to twenty-three years less than Cowart’s sentence for the exact same crimes. The trial court, despite its question at a post-trial hearing regarding an attorney’s position as to whether the court could consider a generic person’s acceptance of responsibility'in sentencing, never explained the extreme discrepancy in the sentences between the two codefendants, as it should have in accordance with McGilvery. The plurality 'asserts that McGilvery should not apply and places the onus on Cowart to make a showing that the court was retaliating against him for exercising his right to a jury trial. First, he has made such an initial showing by showing the massive disparity between his sentence and that of his codefendant. Second, the plurality fails to explain how Co-wart is supposed to prove the mental state of the judge when it requires him to show more than a gravely suspicious disparity in sentences. ■ The plurality claims that what Cowart has demonstrated is “not enough,” but fails to explain what evidence would be enough. One wonders if any evidence aside from a frank admission from the trial judge would ever be enough under such standard. Because such a showing of the mental processes of the trial judge would be virtually impossible, McGilvery correctly places the onus on the trial judge to explain proper reasons for such' a large disparity in sentences. The trial court in this case failed to explain the reasons, and Cowart’s sentence should thus be reversed and remanded. The plurality extrapolates what the mindset of the trial judge was in sentencing, that the court was showing mercy for a plea bargain, without anything in the record in support of such a position.[18]
¶79. In comparison to the codefen-dant’s sentence, Cowart’s sentence appears *677 “so severe as to appear on .the record inexplicable,” and the- large discrepancy between the sentences went unexplained. Thus, for those reasons, as well as those discussed below, I believe that we should vacate Cowart’s sentence and remand the case to the trial court for resentencing,; as well as an on-the-record comparison-of the sentences of London and Cowart, including their respective criminal histories and justifications for any significant discrepancies in the sentences given. Davis, 724 So.2d at 344-45; McGilvery, 497 So.2d 67.

ii Acquitted Conduct

¶ 80. Cowart argues that sentencing him based on acquitted conduct wiolates his Sixth Amendment right to trial by jury, citing Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Apprendi, while not directly on point, generally involves the concept that a jury must find facts that Will enhance a sentence beyond the statutory maximum.
' ¶ 81.' A sentencing court may consider the circumstances surrounding the offense when sentencing a defendant. URCCC 11.02 (a presentence investigation report may contain “[a] description of the offense and the circumstances surrounding it, not limited to aspects developed for the record as part of the determination of guilt”); URCCC 10.04 (at the sentencing hearing, “[t]he state may introduce evidence of aggravation of the offense of which the defendant has been adjudged guilt/’). However, when the conduct being considered to enhance the offense is conduct upon which a jury has acquitted the defendant for a crime or crimes, certain constitutional concerns arise. See Mark T. Doerr, Note, Not Guilty? Go to Jail. The Unconstitutionality of Acquitted-Conduct Sentencing, 41 Colum. Hum. Rts. L. Rev. 235 (Fall 2009). Under federal sentencing law, for example, a court may consider “conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.” United States v. Watts, 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (emphasis added). The Court noted that double jeopardy was not violated by such and that “application of the preponderance [of the evidence] standard at sentencing generally satisfies- due process.” Id. at 156, 117 S.Ct. 633. However, the Court’s holding in Booker eroded, even if it did not overrule, the reasoning behind the holding in Watts.[19] See United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); see also Peter Erlinder, “Doing Time” ... After the Jury Acquits: Resolving the Post-Booker “Acquitted Conduct” Sentencing Dilemma, 18 S. Cal. Rev. L. & Soc. Just. 79 (Fall 2008). Booker extended the line of reasoning behind Apprendi to wit, that a jury must find facts that'enhance a sentence, indicating that considering acquitted conduct in sentencing may implicate Sixth Amendment concerns.
' ¶ 82. Regardless of whether acquitted conduct is an áppropriate consideration during sentencing, what the trial court appears to have done in this case, de facto sentencing Cowart for the acquitted crimes, violates Cowart’s constitutional rights. Based on the trial judge’s statement that Cowart went from “zero to a hundred” when committing this crime, it appears he punished Cowart for culpability-for Carter’s death, as that is what the “a hundred” necessarily refers to. Moreover, the State specifically asked the trial court to punish Cowart for Carter’s death, “disregarding whether the jury found him *678 guilty of murder or not.” The State also introduced Carter’s son’s testimony, which focused on the effects of her death, indicating that they were asking the trial court to punish Cowart for Carter’s death. In light of Carter’s family’s testimony, the trial court’s concern for Carter’s family, in addition to the significant, .stark difference between Cowart’s sentence and that of. London’s, a defendant with prior felonies who actually was' sentenced for manslaughter, indicate that the sentence was, at least in part, handed down to “compensate” for the jury’s acquittal on the murder and manslaughter charges. Such a sentence effecr tively negates the jury verdict acquitting Cowart. Thus, while it is acceptable to consider the circumstances surrounding the offense, it is not appropriate to use that as an excuse to circumvent the acquittal and de facto punish the defendant for the acquitted crime. A defendant may be punished only for the fact that the guilty offense was carried out in a manner warranting increased punishment, not be punished de facto for the acquitted offense. See Watts, 519 U.S. at 155, 117 S.Ct. 633.
¶ §3. Because the trial court failed to follow McGilvery and because the record indicates that it punished Cowart for an acquitted offense, I believe that this Court should vacate Cowart’s sentence and remand the case to the trial court for resen-tencing.[20]
¶84. Because the trial court failed to follow. McGilvery and justify the vast difference between Cowart’s sentence and that qf London’s and because that difference indicates that Cowart’s right to trial by juty was infringed, and also - because the record indicates that the trial court sentenced Cowart for a crime for which he was acquitted, this Court should vacate Cowart’s sentence and remand the ease for a new sentencing hearing. At that hear-jng, it is my conviction that the^ trial judge should justify, on the'record, the appropriateness of any significant discrepancies between Cowart's sentence and London’s sentence.
DICKINSON, P.J., KITCHENS and CHANDLER, JJ., JOIN THIS OPINION.

. Only four members of this Court, Presiding Justice Randolph and Justices Lamar, Pierce, and Coleman, join Part Two Of this opinion concerning Cowart's sentence. Four members of this Court do not join Part Two of this opinion, and the ninth member of this Court does not participate in this case.

. The plurality opinion cites Foster v. State, in which this Court specifically compared the sentence to that of a codefendant as support that a sentence was' reasonable. Foster v. State, 148 So.3d 1012, 1019 n. 5 (Miss.2014), It is troubling that when a codefendant’s sentence supports a lengthy sentence for the defendant at issue, this Court is quick to compare the two. Yet, when a codefendant’s sentence indicates .that the defendant at issue should have received a shorter sentence, the same members of the Court dismiss any comparison to the codefendant’s sentence of twenty-three years less for armed robbery.

. The trial court’s statement that Cowart went from "zero to, a hundred when he got involved in this and he took part in this act" almost illogically implies that Cowart was being punished more severely for his lack of criminal history than London, a criminal who perhaps went-from seventy-five to "a hundred and fifty.”

. If London’s sentence was forty-five years, as suggested by Cowart, then his total sentence was eight years less than Cowart's. If his sentence was forty years, as the State suggests, then his total sentence was thirteen years less than Cowart’s.

. The plurality’s assertion that the trial court "noted that his accomplices had accepted responsibility for their actions, while petitioner had not” misrepresents the record.

. Watts did not address Sixth Amendment issues. Booker, 543 U.S. at 240, 125 S.Ct. 738.

. The plurality ignores this basis to reverse and remand Cowart's sentence.